*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2003 FED App. 0378P (6th Cir.)
File Name: 03a0378p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————

PHYLLIS ELAM, for Kamea
Golay, a minor,
        *Plaintiff-Appellant,*

    *v.*

COMMISSIONER OF SOCIAL
SECURITY,
        *Defendant-Appellee.*

No. 03-5315

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 01-00126—Joseph H. McKinley, Jr., District Judge.

Submitted: June 19, 2003

Decided and Filed: October 24, 2003

Before: KEITH, MARTIN, and SUTTON, Circuit Judges.

———————

#### COUNSEL

**ON BRIEF:** Mark D. Pierce, Paducah, Kentucky, for
Appellant. Christopher G. Harris, Elyse Sharfman, Dennis R.
Williams, Mary Ann Sloan, SOCIAL SECURITY

ADMINISTRATION, OFFICE OF GENERAL COUNSEL,
Atlanta, Georgia, for Appellee.

———————

#### OPINION

———————

    BOYCE F. MARTIN, JR., Circuit Judge. Phyllis Elam, on
behalf of her minor daughter Kamea Golay, appeals a district
court judgment affirming the Commissioner's termination of
supplemental security income benefits. The parties have
waived oral argument and this panel unanimously agrees that
oral argument is not needed. *See* Fed. R. App. P. 34(a).

    Kamea was born on December 4, 1983, and was allegedly
disabled due to mental retardation. Kamea was found
disabled as of August 1, 1991, and was awarded benefits.
However, on August 22, 1996, Congress enacted the Personal
Responsibility and Work Opportunity Reconciliation Act,
which changed the definition of disability for children seeking
benefits. *See* 42 U.S.C. § 1382c(a)(3)(C). Pursuant to the
Act, the Commissioner reevaluated Kamea's status and
determined that she no longer satisfied the new definition of
disability for children. After a hearing, an administrative law
judge determined that as of August 1, 1997, Kamea was no
longer entitled to benefits. The Appeals Council declined to
review that decision.

    Ms. Elam then filed a civil action seeking judicial review
of the administrative law judge's decision. Upon *de novo*
review of a magistrate judge's report, the district court
affirmed the termination of benefits and granted judgment to
the Commissioner.

    Judicial review is limited to determining whether there is
substantial evidence in the record to support the
administrative law judge's findings of fact and whether the
correct legal standards were applied. *See Key v. Callahan*,

109 F.3d 270, 273 (6th Cir. 1997). The decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision. *See id.*

There is a three step process in determining whether a child is "disabled" under the new definition set forth in the Act. First, the child must not be engaged in substantial gainful activity; second, the child must have a severe impairment; and third, the severe impairment must meet, medically equal or functionally equal one of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924. In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. *See* 20 C.F.R. § 416.924(a); *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). It is insufficient that a claimant comes close to meeting the requirements of a listed impairment. *See Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986).

The issue before this Court is whether Kamea has an impairment that meets, medically equals or functionally equals the impairment of "mental retardation" listed in sections 112.05 and 12.05 of Appendix 1. We believe that substantial evidence supports the administrative law judge's decision that Kamea has no such impairment.

Ms. Elam contends that the administrative law judge improperly failed to consider Kamea's intelligence test scores that were seventy or below. While Ms. Elam points to Kamea's test scores from March 1991 through September 1998, the regulations provide that intelligence test scores must be sufficiently current for an accurate assessment under section 112.05. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, § 112.00D. Intelligence test results obtained between the ages of seven and sixteen are considered to be current for four years if the score is less than forty, and for two years if the score is forty or above. Because Kamea's test results all

exceeded the forty point standard, they would be considered current for only two years. Therefore, only those scores obtained within two years prior to the date of the administrative hearing in 1999 are valid for purposes of determining whether Kamea is disabled under the Act.

On November 29, 1997, Dr. Spence evaluated Kamea and administered the Wechsler Intelligence Test for Children. Kamea obtained a verbal score of fifty-seven, a performance score of seventy-seven, and a full scale score of sixty-four. In his report, Dr. Spence noted that while Kamea's performance score was essentially equivalent to her 1996 score, her verbal and full scale scores had dropped by eighteen and nineteen points, respectively. On the other hand, Kamea's scores on the Wide Range Achievement Test-Revised III were significantly higher than what would be expected given her verbal score of only fifty-seven. Although the scores examined in isolation would tend to indicate mental retardation, Dr. Spence concluded that Kamea was actually in the borderline range of intelligent functioning, given the score discrepancies between the 1996 and 1997 tests.

Mr. Andrew Jensen, a psychological associate, also performed intelligence tests upon Kamea in September 1998. Those test results revealed a verbal score of sixty-six, a performance score of sixty-six, and a full scale score of sixty-four. Mr. Jensen considered the test results to be indicative of mild mental retardation. Ms. Elam relies on Kamea's scores on the tests administered by Mr. Jensen in support of her argument that the Commissioner erred as a matter of law in failing to find that Kamea's scores were within the necessary range to meet the criteria of section 112.05.

The administrative law judge rejected the scores obtained by Mr. Jensen, along with his conclusion of mental retardation, because Mr. Jensen was not an acceptable source of medical evidence. *See* 20 C.F.R. § 416.913(a). By regulation, an acceptable source of medical evidence is considered to be either a licensed physician, a licensed

osteopath or a licensed or certified psychologist. *See* 20 C.F.R. §§ 404.1513(a)(1)-(3); 416.913(a)(1)-(3). Thus, the Commissioner did not err in determining that Mr. Jensen was not qualified as an acceptable source of medical evidence. *See* 20 C.F.R. § 416.913(a).

The conclusions of Dr. Spence that Kamea was operating in the borderline range of intelligent functioning, rather than being mentally retarded, are supported by the testimony of Dr. Dennis Anderson, an educational psychologist who testified at the administrative hearing. Dr. Anderson agreed with Dr. Spence that Kamea was actually operating within the borderline range of intellectual functioning, although her intelligence test scores, standing alone, would indicate mental retardation. Dr. Anderson relied, in part, on his observations of Kamea during the hearing and her testimony. He concluded that Kamea's communicative skills were inconsistent with those of a person with an intelligence test score in the low to mid-sixties.

Under section 416.926(a), if a child's impairment – or combination of impairments – does not meet or is not medically equivalent in severity to a listed impairment, then the Commissioner will assess all functional limitations caused by the impairment to determine if the child's impairments are functionally equivalent in severity to any of the listed impairments of Appendix 1. The following areas of development may be considered in determining whether a child's impairments are functionally equivalent to a listed impairment: 1) cognition/communication, which is the ability or inability to learn, to understand and to solve problems through reasoning; 2) motor, which includes the ability or inability to use gross and fine motor skills to serve one's physical purposes; 3) social, which includes the ability or inability to form and maintain relationships with other individuals and groups; and 4) concentration, persistence or pace, which is the ability or inability to attend to and sustain concentration on an activity or task. *See* 20 C.F.R. § 416.926a. A finding of functional equivalence to a listed

impairment is warranted when the child has an extreme limitation in one area of functioning or marked limitations in two areas of functioning. *See id.* In this case, the administrative law judge determined that there was no evidence that Kamea was markedly limited in at least two categories of functioning. He also determined that there was no evidence that Kamea was extremely limited in one area of functioning.

Kamea's Wide Range Achievement Test Results indicated that she was reading at the eighth grade level, spelling at the fifth grade level and had mathematical abilities at the fourth grade level. At the time of the hearing, Kamea was attending regular classes in the ninth grade with one special education class in English. Kamea's teachers provided assessments of her performance that indicated that she was able to communicate with her instructors and was able to take notes and accomplish homework at her academic level.

Kamea submitted no evidence of any marked or extreme functional limitations in her motor skills. To the contrary, she was actively pursuing her desire to participate in her school's basketball team. The evidence revealed no significant limitations in social functioning. Ms. Elam conceded that Kamea participated in both school and church activities, socialized with her friends and went to church with her grandmother. Kamea testified that she had approximately ten girl friends with whom she socialized. One of her teachers described Kamea as being a typical ninth grade student who interacted well with her peers.

Finally, there was no evidence presented of any marked or extreme limitation in personal functioning. Kamea's teachers noted no difficulties with her self-help skills and observed that Kamea was always clean. Additionally, her mother reported that Kamea was able to dress herself.

In light of the above, we find that substantial evidence supports the administrative law judge's decision. Accordingly, we affirm the district court's judgment.