James SIEBERT, Plaintiff–Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.

No. 02–2158.

United States Court of Appeals, Sixth Circuit.

July 23, 2004.

Before BATCHELDER, GIBBONS, and COOK, Circuit Judges.

BATCHELDER, Circuit Judge.

Plaintiff–Appellant James Siebert appeals cessation of his Supplemental Security Income benefits. Because we conclude that substantial evidence supported the decision of the administrative law judge, we AFFIRM the judgment of the district court.

## BACKGROUND

Mr. Siebert suffered head trauma while an infant, which resulted in his having a metal plate placed into his head and ultimately caused numerous physiological and psychological problems. Consequently, in 1992, Mr. Siebert filed for childhood Supplemental Security Income ("SSI") benefits. The Commissioner granted the application, finding mental retardation and hyperactivity attention deficit disorder. Some of the symptoms of his mental deficits included depression, hyperactivity, tantrums, and poor memory.

In intelligence testing done in 1991, Mr. Siebert scored full scale score of 76; in March of 1996, Mr. Siebert was again tested for intelligence, this time receiving an 85 for his full scale score. In April of 1996, Mr. Siebert was examined by a consulting psychologist. Siebert was uncooperative, putting forth little effort and performing very poorly. That performance, in combination with his prior scores and uncooperative attitude, caused the examining psychologist to conclude he was "faking" and a "malingerer." In May of 1996, after a consultative psychiatric examination, Mr. Siebert was diagnosed with low intelligence and a possible learning disability. That same month, a state agency psychologist who had not been involved in any of the prior testing reviewed the records and opined that Mr. Siebert, while having limited mental acuity—including low attention span and low ability to deal with detailed instructions, make goals or plan for them realistically—was not otherwise severely hampered in his ability to do work. The Social Security Administration ("SSA") informed Mr. Siebert on June 26, 1996, that his disability benefits would be terminated effective August 31, 1996. Siebert was by that time over the age of 18.

Mr. Siebert filed a reconsideration request, claiming, among other things, that he remained "slow," was blind in one eye, and had a metal plate in his head. SSA denied this request, and he requested a hearing, which was held before an administrative law judge ("ALJ") on February 9, 2000. The ALJ determined in his June 27, 2000, decision, that Mr. Siebert had improved since the August 1992 determination of disability, that the improvement was related to Mr. Siebert's ability to work, and that although Mr. Siebert had a severe impairment and was unable to perform his past relevant work, as of June 1, 1996, he had the residual capacity to perform jobs that existed in the national economy in significant numbers, and was not disabled. The Appeals Council denied Mr. Siebert's appeal of the ALJ's decision, and Mr. Siebert filed a complaint in United States District Court seeking review of the Commissioner's final decision. The magistrate judge issued a Report and Recommendation on June 14, 2002, recommending that the ALJ's decision denying benefits be affirmed. The district court judge affirmed that Report and Recommendation over Mr. Siebert's objections in an order dated July 30, 2002. Mr. Siebert timely appeals from that order.

## ANALYSIS

We will disturb the decision of the ALJ only if it is not supported by substantial evidence. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir.2003). "The decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision." *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citations omitted).

*A. Substantial Evidence Supports A Finding of No Disability.*

■ The claimant bears the burden of proving his disability. *See McCoy v. Chater,* 81 F.3d 44, 46 (6th Cir.1995). The relevant statute provides that

The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

\* \* \* \* \* \*

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(1)(A) and (2)(A).

We review a claim that childhood disability benefits should not have been terminated upon the claimant's reaching adulthood using the same framework the SSA uses to determine first-time eligibility for adults. We have described that framework for proving disability as a five-step sequence.

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529 (6th Cir.1997). The burden is on the claimant to prove disability through step 4. It is the Commissioner's burden to prove that the claimant is not disabled at step 5. *Id.*

Mr. Siebert contends that if the ALJ had considered the whole record, the ALJ would have found Siebert disabled at step 3, that is, that he had an impairment or combination of impairments meeting or equal to a listed impairment. He cites several examples of statements by treating/evaluating physicians, which he argues that the ALJ ignored and that militate in his favor. However, we do not review whether there is some evidence in the record supporting the claimant's position; we review whether the decision of the ALJ is supported by substantial evidence, that is, evidence that is *"adequate* to support [the] conclusion." *Perales,* 402 U.S. at 401, 91 S.Ct. 1420 (emphasis added).

Furthermore, Mr. Siebert's argument that the ALJ failed to consider the "whole record" is inaccurate. The ALJ plainly did consider the entire record, including the evidence on which Siebert relies and concluded that it was not persuasive for a number of reasons. Detailing the internal contradictions in Dr. Imasa's consultative mental examination, the ALJ concluded: "Consequently this examination and the doctor's conclusions cannot be given more than minimal weight in the final decision." Dr. Shin's observations and diagnosis were given little weight by the ALJ because "[t]he doctor offered no objective evidence, only a diagnosis that is unsupported in file." About Dr. Forrer's report, the ALJ noted: "Likewise Dr. Forrer has not availed himself of the most recent IQ scores. Therefore, his final assessment of work-related abilities is flawed."

Contrary to the claimant's assertion, the district court did consider all of the evidence. On the basis of the entire record, the ALJ concluded that Mr. Siebert's impairment, although severe, did not meet or equal a listed impairment. Substantial evidence supports this conclusion.

## B. The Credibility Determination.

■ Siebert also argues that the ALJ *must* make a credibility determination of the claimant, and the statement that Siebert is not "considered a reliable reporter of his symptoms and limitations" does not suffice. Siebert cites our unpublished opinion in *Bailey v. Comm'r*, 1999 WL 96920 at *3 (6th Cir.1999) as support for a mandatory credibility determination by an ALJ. In that case, however, we merely pointed out that it is the ALJ, *as opposed to the appellate courts*, that must make credibility determinations.

It is clear from the record that the ALJ did determine Siebert's credibility. Mr. Siebert admits as much in his brief: "The fact that the claimant's testimony may not have been reliable is consistent with his disability, i.e., schizophrenia and low IQ. And while he may not be accurate with facts...." Indeed, the ALJ recognized that Mr. Siebert gave different answers at his different interviews, and he "further diminished his credibility by putting forth minimal effort on the next IQ test."

## C. The Vocational Expert's Testimony

■ Siebert contends that the ALJ's hypothetical questions to the Vocational Expert did not accurately portray Siebert's mental impairment, and that the district court erred in failing to remand this matter to the ALJ for further vocational testimony. We find no error here. The ALJ posed hypothetical questions to the Vocational Expert which were consistent with impairments and limitations the ALJ found were supported by the record. *See Bradford v. Sec'y of Dept. of Health and Human Serv.*, 803 F.2d 871, 874 (6th Cir.1986). We have concluded that the ALJ's determinations are supported by substantial evidence, and we therefore conclude that the hypothetical question to the Vocational Expert was appropriate.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.