**Anthony GWIN, A Minor, Through His Mother, Beverly Gwin, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

No. 02–4317.

United States Court of Appeals, Sixth Circuit.

Sept. 8, 2004.

Richard A.F. Mendelsohn, Solon, OH, for Plaintiff–Appellant.

Michael Anne Johnson, Asst. U.S. Attorney, Cleveland, OH, for Defendant–Appellee.

Before: BOGGS and KENNEDY, Circuit Judges; and RUSSELL, District Judge.*

RUSSELL, District Judge.

Plaintiff–Appellant Anthony Gwin, a minor, appeals the decision that he is not entitled to continuation of Supplemental Security Income ("SSI") childhood benefits under Title XVI of the Social Security Act. 42 U.S.C. § 1382c(a)(3).

## BACKGROUND

Gwin applied for and was granted SSI benefits in September 1994. In May 1997, the Social Security Administration reviewed his case and determined that he was not entitled to benefits. A disability hearing officer reviewed and denied his claim. Then, Gwin's application for reconsideration was denied. Next, Gwin had a hearing before an Administrative Law Judge and the Administrative Law Judge found that Gwin was not disabled. Gwin requested and was denied review by the Appeals Council. On April 4, 2002, Gwin filed a complaint in United States District Court. The Magistrate Judge issued a report and recommendation affirming the ALJ's decision. On September 17, 2002, the district court issued an order adopting the Report and Recommendation and affirming the decision of the Social Security Administration.

Gwin was 12 years old when the hearing before the Administrative Law Judge was held in December 1998. Gwin was in seventh grade and was in special education classes at school for severely behaviorally handicapped children. Gwin had many behavioral problems. First, his mother reported him as being aggressive, not taking responsibility for his actions, not staying focused on tasks, and having little socialization with other children. Gwin's teachers have reported to his mother that he throws tantrums, punches and bangs his head on the wall, and is hostile to other children.

Gwin had ongoing behavioral problems at school. In May 1996, his teacher reported that he had average ability and was capable of doing grade level school work. However, he was unable to work with small groups of other students, even the best behaved ones. Further, he aggravated others, cried, threw fits, shouted out, showed disrespect for teachers, and was deceptive by watching to see if he would get caught. In February 1997, the school psychologist and Gwin's teacher reported continued behavioral problems including tantrums. Also in February 1997, Gwin was suspended from school for hitting a student and almost knocking down a teacher.

In March 1997, he was suspended for refusing to do his work even though his teacher had helped him. At that time Gwin's teachers gave conflicting reports on his attention span, frustration, and peer acceptance. Two reported that his attention span was "very much" or "pretty much" a problem. One reported that attention span was "just a little" problem and frustration was "pretty much" a problem. Two teachers reported that his acceptance by peers was "just a little" prob-

---

* Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

lem. One reported that it was "pretty much" a problem.

In April 1997, he continued to have behavioral problems with crying, pouting, tantrums, and inability to accept responsibility for his actions. In May 1997, Gwin's teacher reported that he was disrespectful, did not accept responsibility, and had few peer relationships. In the same month, Dr. Mel M. Zwissler, Ph.D. psychologist, evaluated Gwin and found that his impairments were not severe enough to meet, medically equal, or functionally equal a listed impairment in the Social Security Regulations so as to make Gwin eligible for benefits. Dr. Zwissler found that Gwin had "less than marked" limitations in cognitive/communications function, social skills, and concentration, persistence, and pace.

In December 1997, Scott Dowling, M.D., interviewed Gwin and his mother and reviewed Gwin's file. Dr. Dowling reported about Gwin's previous history and his strengths, such as doing well in a one-to-one setting, having "good persistence and concentration" on a reading and math examination, and playing with neighborhood children including one good friend who lives down the street. Dr. Dowling diagnosed Gwin with oppositional defiant disorder and noted continuing serious impairment of school functioning. Also, in December, J. Rod Coffman, Ph.D., reviewed Gwin's records and did not find that Gwin's impairments meet, medically equal, or functionally equal the severity of a listing. Dr. Coffman opined that Gwin had "marked" impairment of social function and "less than marked" impairment of concentration, persistence, or pace. From April–October 1998, Gwin was suspended from school or summer camp five times for such offenses as fighting, hitting a teacher, insubordination, threatening a student and teacher, and causing a friction burn on another student's hand.

At Gwin's hearing, Melvin Chavinson, M.D., testified as a medical expert that Gwin's impairments did not meet, equal, or functionally equal any of the listings of impairments. Dr. Chavinson found that Gwin had oppositional defiant behavioral disorder and his examining physicians had ruled out attention deficit hyperactivity disorder. Dr. Chavinson opined that Gwin had some impairment with concentration, persistence, and pace related to his behavioral problems and that he had a "marked" impairment in the social domain. On cross-examination, Gwin's attorney asked Dr. Chavinson if Gwin had a personality disorder. Dr. Chavinson explained that personality disorders are not diagnosed with respect to children Gwin's age since personality disorders are based on patterns of relating behavior, impulse, and affect modulation in persons at least eighteen years of age.[1]

## ANALYSIS

This Court reviews the decision of the Commissioner of Social Security to determine whether substantial evidence supports the findings of fact and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir.2003). "The decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision." *Id.* "Substantial evidence is defined as such relevant evidence

---

1. In 1999, the Social Security regulations said only that the adult listing should be applied to children when applicable. Current regulations specifically apply the regulations on personality disorders to children.

as a reasonable mind might accept as adequate to support a conclusion." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir.2003) (quoting *Stanley v. Secretary of Health & Human Servs.*, 39 F.3d 115, 117, (6th Cir.1994)).

Gwin is a minor appealing the ALJ's decision denying him Social Security Disability benefits.

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and sever functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

To determine whether an impairment is functionally equivalent to a listing and therefore sever enough to entitle a minor to benefits, the most pertinent method is consideration of whether the child's impairment affects "broad areas of development of functioning." 20 C.F.R. § 416.926a(b)(1)-(4) (1999). If a child has an "extreme" limitation in one area of development or functioning, the impairment is considered functionally equivalent in severity to a listed impairment. 20 C.F.R. § 416.926a(b)(2) (1999). For children over 3 years of age, five areas of development or functioning are considered to be: 1) cognition/communication, 2) motor, 3) social, 4) personal, and 5) concentration, persistence, or pace. 20 C.F.R. § 416.926a(c)(4) (1999).

█ The commissioner argues that Gwin did not object to the magistrate judge's determination that his impairments do not meet or equal a listing and thus failed to preserve that issue for appeal. "The requirement for specific objections to a magistrate judge's report is not jurisdic-

tional and a failure to comply may be excused in the interest of justice." *Kelly v. Withrow*, 25 F.3d 363, 366 (6th Cir. 1994). Therefore, the issue of whether Gwin's impairments meet or equal a listing will be discussed even though Gwin did not object to the magistrate judge's report.

█ Gwin argues that he meets or equals Listing 12.08, personality disorder. First, no medical professional has diagnosed Gwin with having a personality disorder, or an equivalent disorder, or as meeting the criteria in Part A of Listing 12.08. Second, Gwin would have to meet three of the following requirements in Part B of Listing 12.08:

> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
>
> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.08 (1999).

The requirements for finding that Gwin's impairment was functionally equivalent to a listing and for a finding that Gwin had a personality disorder or equivalent overlap in two key areas: social functioning; and concentration, persistence or pace. The ALJ found that Gwin had a "marked" impairment of social functioning but not an "extreme" impairment. Two of Gwin's teachers reported that lack of peer acceptance was "just a little" problem for

Gwin. Another reported that Gwin was sometimes cooperative and pleasure to have in class. One other teacher thought he did well in one-on-one settings. Two medical professionals thought Gwin had "marked" impairment of social function. One thought he had "less than marked." One noted that Gwin did well in one-on-one settings, played with neighborhood children and had one good friend.

Gwin argues that the evidence shows that his limitation was "extreme" in socialization because he only had one friend and that relationship was shaky. Also, he had fights at school. However, the weight of the evidence from teachers, psychologists, and doctors shows that Gwin's limitation was only "marked," rather than "extreme." The ALJ's conclusion is supported by substantial evidence that a reasonable person might accept as adequate to support a conclusion.

Gwin argues that he has deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner or that he would have problems completing tasks at school if he were in a regular classroom due to his behavioral problems. The ALJ found that Gwin did not have a "marked" limitation in his concentration,

persistence or pace. If the ALJ had found a marked limitation, Gwin would have qualified for benefits since he also had a marked limitation of social function. One of Gwin's teachers rated distractability and attention span as "just a little" problem. Another teacher stated that when Gwin was cooperative he was capable of completing tasks. Three of the medical professionals rated Gwin's limitation as "less than marked." An-

other medical professional stated that Gwin "showed good persistence and concentration" on the exam he administered.

While Gwin may have problems if placed in a regular classroom, the standard is whether substantial evidence supports the conclusion of the ALJ. Evidence from Gwin's teachers and medical professionals shows that he has "less than marked" concentration, persistence, or pace in completing tasks. Therefore, the ALJ's conclusion is supported by substantial evidence that a reasonable mind might accept as adequate to support a conclusion.

Finally, because Gwin would have to meet three of the criteria under Part B of 112.08, Gwin would have to show that he meets either of the other two criteria: 1) a marked restriction of activities of daily living or 2) repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors). Gwin has not presented evidence showing that he meets the other two criteria.

## CONCLUSION

Substantial evidence supports the Administrative Law Judge's decision. Therefore, the district court's decision is **AFFIRMED.**