NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0812n.06

No. 09-5409

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Dec 18, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **LISA D. HAYES,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee*. | ) | |

BEFORE:    SUHRHEINRICH, COLE, and GILMAN, Circuit Judges.

**COLE, Circuit Judge**.  Plaintiff-Appellant Lisa D. Hayes seeks review of a district court judgment affirming the decision of an Administrative Law Judge ("ALJ"), who denied Hayes's request for supplemental security income under the Social Security Act ("SSA"), 42 U.S.C. § 1381a, and also denied her request for consultative intelligence testing.  Because the ALJ did not abuse his discretion, we **AFFIRM**.

## I.  BACKGROUND

On July 8, 2005, Hayes filed for supplemental security income.  The Commissioner denied her application initially and on reconsideration.  Hayes subsequently requested a hearing before an ALJ.  The hearing was held on September 11, 2007.  To decide whether Hayes was disabled, the ALJ applied the five-step sequential evaluation process that 20 C.F.R. § 416.920 requires.  The ALJ found that Hayes had not performed substantial gainful activity since her application for benefits

(step 1), and that she had "severe" impairments (step 2), but that her impairments did not meet or medically equal any impairment listed in 20 C.F.R. pt. 404, subpt. P., app. 1 (step 3). The ALJ then assessed Hayes's residual functioning capacity ("RFC"), or her maximum work capacity despite her limitations (step 4). The ALJ concluded that she could perform medium work that did not involve exposure to extreme temperatures, dusts, odors, or gases. The ALJ also accommodated for limited left-eye acuity, mild to moderate pain, and mild to moderate loss of concentration. Taking these limitations into account, the ALJ found that Hayes could perform simple and low-level detailed tasks, with the abilities to perform repetitive tasks, get along with others, adapt at that level of functioning, and deal with the public during simple situations. The ALJ denied Hayes's request for consultative intelligence testing, which Hayes requested to support her claim of mental retardation. Finally, the ALJ found that Hayes performed past relevant work and that she could perform a significant number of other jobs identified by the vocation expert ("VE") (step 5). Therefore, the ALJ found that Hayes was not disabled. On February 13, 2008, the Appeals Council denied Hayes's request for review of the ALJ decision.

Under 42 U.S.C. § 1383(c)(3), Hayes then commenced a civil action for judicial review of the final administrative decision in the United States District Court for the Eastern District of Tennessee. Both Hayes and the Commissioner filed motions for summary judgment. The magistrate judge recommended affirming the Commissioner's administrative decision, rejecting Hayes's argument that the ALJ erred by not ordering consultative intelligence testing and noting that it was within the ALJ's discretion to order such testing. Hayes filed objections, but the district court concluded that substantial evidence supported the ALJ's decision, accepted the magistrate judge's

recommendation, and affirmed the agency's decision. Hayes filed a timely notice of appeal.

## II.  ANALYSIS

### A.    Standard of review

Under 42 U.S.C. § 405(g), this Court's review of the Commissioner's decision is limited to determining whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence means "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). If supported by substantial evidence and decided under the correct legal standard, the Commissioner's decision must be affirmed even if this Court would decide the matter differently, and even if substantial evidence also supports the claimant's position. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

### B.    Legal framework for evaluating disability claims

"The plaintiff has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability . . . ." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The SSA defines a "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). As outlined above, an ALJ undertakes a five-step sequential

evaluation mandated by regulation to make a determination as to disability. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Hayes argues that the ALJ erred at step three—whether her impairment meets or medically equals one of the impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1—because further development of the record was necessary to decide if she can meet Listing 12.05, mental retardation.

**C.    Consultative intelligence testing**

Hayes raises only one issue on appeal. She argues that the ALJ should have ordered additional testing to develop her disability claim because such testing might show that she is mentally retarded and thus entitled to disability benefits under Listing 12.05(C).

*1.    Listing 12.05(C)*

The diagnostic description of mental retardation in the introductory paragraph of Listing 12.05 states: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates onset of impairment before age 22." A claimant can demonstrate that she is disabled by presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). In other words, to demonstrate mental retardation, a claimant must demonstrate three factors to satisfy the diagnostic description: (1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations. Beyond these three factors, a claimant also must satisfy "any one of the four sets of criteria" in Listing § 12.05. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); *see also Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("[A] claimant will meet the listing for mental retardation

only if the [the claimant's] impairment satisfies the diagnostic description in the introductory

paragraph and any one of the four sets of criteria[.]") (second alteration in original) (internal

quotations marks omitted). The four sets of criteria in Listing 12.05 provide:

> (A) Mental incapacity evidenced by dependence upon others for personal needs (e.g. toileting, eating, dressing or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> (B) A valid verbal, performance, or full scale IQ of 59 or less; or
>
> (C) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or
>
> (D) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment resulting in at least two of the following:
>
>> (1) Marked restriction of activities of daily living; or
>>
>> (2) Marked difficulties in maintaining social functioning;
>>
>> (3) Marked difficulties in maintaining concentration, persistence, or pace; or
>>
>> (4) Repeated episodes of decomposition, each of extended duration.

20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.05(C). Hayes argues that, with additional testing, she might

be able to meet criteria (C) as well as the three required factors under the diagnostic description.

> *2.      Discretion in ordering testing*

An ALJ has discretion to determine whether further evidence, such as additional testing, is

necessary. 20 C.F.R. § 404.1517; *id.* § 416.917 ("If your medical sources cannot or will not give us

sufficient medical evidence about your impairment for us to determine whether you are disabled or

blind, we may ask you to have one or more physical or mental examinations or tests."); *see also*

*Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."). Thus, we apply an abuse-of-discretion standard to the ALJ's refusal to order testing.

In *Foster v. Halter*, this Court considered a request for consultative intelligence testing. The claimant in *Foster* had a full scale IQ of 69, but the record did not demonstrate that she had adaptive-skills limitations or onset before age twenty-two. 279 F.3d at 355. The Court, therefore, affirmed the ALJ's finding that her impairment did not meet or equal Listing 12.05 and rejected her request for additional testing: "Given that there was already sufficient testing on Foster's impairments in the record for the ALJ to evaluate her mental condition . . . , the ALJ did not abuse his discretion in denying Foster's requests for additional testing or expert testimony." *Id.* at 356. It is important to note that Foster's IQ of 69 was not sufficient by itself to satisfy Listing 12.05. *Id.; see also Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 7 (6th Cir. 2004) ("[T]wo IQ scores of 70, without more, does not satisfy the requirements of Listing 12.05(C)."). Thus, even if additional testing measured Hayes's IQ below 70, that result, standing alone, would not equal listing 12.05—she must still satisfy the three-prong definition of mental retardation and criteria (C).

        *a. Subaverage intellectual functioning*

Hayes argues that her poor academic record demonstrates that she has subaverage intellectually functioning. Hayes's school records, on which she relies, however, do not necessarily show that she had intellectual deficiencies. Instead, the records support the conclusion that she had

poor school attendance and a troubled home life. Hayes was absent and missed a great deal of school during the years when she did not pass. In contrast, when she attended class, she achieved passing marks. For example, she was retained in the first grade after attending only thirty-three days of school but earned grades of B, C, and D in the eighth grade when she attended 177 days of school. Further, Hayes has admitted to past drug abuse, which, as the ALJ acknowledged, might have undermined her academic performance. Finally, none of her school records mention mental retardation or intellectual deficiencies.

Hayes also argues that her work history shows that she has subaverage intellectual functioning, but the record is mixed on this point. First, her own responses and explanations for why she left past employment are inconsistent. For example, in agency forms, she indicated that she stopped working because of her poor physical health and because she needed to care for her husband. Before the ALJ, however, she testified that she stopped working because of her poor health but also testified that she was fired from her last job as a cashier because she did not stock the shelves correctly, could not run the cash register without mistakes, and was too slow. Moreover, no evidence, beyond her own testimony, supports her assertion that she could not succeed at these jobs due to mental impairment. Additionally, the ALJ considered Hayes's employment record, which includes cashier positions, and concluded that she has had mentally challenging jobs.

Hayes responds by claiming that her work history is consistent with "mild mental retardation" because "individuals with mild mental retardation 'usually achieve social and vocational skills adequate for minimum self-support, but may need supervision, guidance, and assistance . . . [and] appropriate supports.'" (Hayes Br. 12-13 (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical*

*Manual of Mental Disorders Text Revision*, § 317 (4th ed. 2000) ("DSM-IV-TR")).) But Hayes has offered no evidence that she needed "supervision, guidance, and assistance," or "appropriate supports."

Finally, therapists and psychologists have been treating Hayes for depression for nearly a decade, and at no point have they indicated that Hayes has limited intellectual functioning. *Cf. Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007) ("It is undisputed that no psychologist has diagnosed [claimant] with mental retardation."). Hayes responds that her treatment center, the Helen Ross McNabb Center, does not perform IQ testing. But that misses the point. Her mental health records undermine her argument that she has intellectual deficiencies because the psychiatric evaluations demonstrate that she has clear, logical thinking. In sum, the record to support her claim that she might suffer subaverage intellectual functioning is slight and, without more, Hayes cannot show that the ALJ abused his discretion.

### b. Onset before age twenty-two

Hayes also relies on her school records to argue that her poor academic record demonstrates that she had intellectual deficits during her developmental years. For the reasons explained above, her school records prove little. Additionally, this Court has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two. *Cf. Foster*, 279 F.3d at 355 ("The only evidence in the record pertaining to this issue is that Foster left school after completing ninth grade, but why Foster did not continue her studies is unclear."). Hayes offers no other evidence to establish onset before age twenty-two, and, without establishing this prong, she cannot equal Listing 12.05. *See West v.*

*Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007) (affirming, in part, because claimant offered no evidence of onset before age twenty-two).

### c. Adaptive-skills limitations

The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills. *Heller v. Doe*, 509 U.S. 312, 329 (1993) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 28-29 (3d rev. ed. 1987) ("DSM-III")). To determine the definition of mental retardation under the SSA, it is appropriate to consult leading professional organizations' definitions. *See* 67 Fed. Reg. 20022 (2002). The American Psychiatric Association defines adaptive-skills limitations as "[c]oncurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." DSM-IV-TR at 49. No part of the record indicates that Hayes has adaptive-skills limitations. To the contrary, the record shows that Hayes's adaptive skills are not deficient. She cares for herself and her husband; cooks meals, does laundry, and shops; manages her finances; and takes public transportation. All of these daily living skills indicate that, even with further testing, she would not be able to establish this necessary prong. Thus, it was not an abuse of discretion for the ALJ to deny her request for consultative intelligence testing.

### III. CONCLUSION

Because the record indicates that, even with additional testing, Hayes would not be able to meet Listing 12.05(C), the ALJ did not abuse his discretion, and we **AFFIRM**.