NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  14a0535n.06

Case No. 13-4391

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jul 22, 2014*
DEBORAH S. HUNT, Clerk

STEPHANIE BARNETT ex rel. D.B., a                )
minor,                                           )
                                                 )
     Plaintiff-Appellant,                     )       ON  APPEAL  FROM  THE  UNITED
                                                 )       STATES  DISTRICT  COURT  FOR
v.                                               )       THE  NORTHERN  DISTRICT  OF
                                                 )       OHIO
COMMISSIONER OF SOCIAL SECURITY,                 )
                                                 )
     Defendant-Appellee.                      )
                                                 )


BEFORE:  MOORE, SUTTON and ALARCÓN, Circuit Judges.[*]


SUTTON, Circuit Judge.    Stephanie Barnett appeals an administrative law judge's

decision to deny her application for supplemental security income.  We affirm.

Barnett's school-aged son D.B. suffers from asthma and three developmental disorders.

Claiming that these ailments qualify him for disability benefits, she applied for supplemental

security income on his behalf.  The Social Security Administration denied her application, as did

an ALJ.  Both the Social Security Appeals Council and the district court agreed with the ALJ.

Barnett appealed.

---

[*] The Honorable Arthur L. Alarcón, Senior Circuit Judge of the United States Court of
Appeals for the Ninth Circuit, sitting by designation.

In disability cases, we give fresh review to the district court's decision, asking whether the ALJ applied the correct legal rules to reach a decision supported by substantial evidence. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013).

Under federal law, a parent may seek supplemental security income on behalf of a disabled child "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected . . . to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(C)(i). In implementing this statute, the Commissioner of the Social Security Administration assesses childhood-disability claims based on three inquiries: Does the child engage in substantial and gainful employment? Does the child suffer from one or more severe impairments? Do the impairments "meet, medically equal, or functionally equal" any of the nearly 100 disabilities listed in the Code of Federal Regulations? *See* 20 C.F.R. § 416.924(a)–(d). The parties and the ALJ agree that D.B., age eleven, does not have a job, and they agree that he suffers from four severe impairments: asthma, borderline intellectual functioning, mixed receptive-expressive language disorder, and attention deficit hyperactivity disorder. They part ways over whether these impairments "meet" or "functionally equal" the listing requirement.

*Does the impairment "meet" or "medically equal" one of the listings?* Barnett claims that these impairments meet or medically equal the criteria of Listing 112.05(D), which covers mental retardation (called intellectual impairment today). Listing 112.05(D) has four requirements. Two appear in Listing 112.05's introductory clause: "significantly subaverage general intellectual functioning" with "deficits in adaptive functioning." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.05. The other two appear in section D itself: an IQ score between 60 and 70 and "a physical or other mental impairment imposing an additional and significant

limitation of function." *Id.* § 112.05(D). D.B. must meet "*all* of [a listing's] specified medical criteria" to be considered disabled under its terms. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also* 20 C.F.R. § 416.925(c)(3) ("We will find that your impairment(s) meets . . . a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction.").

The key problem with Barnett's argument is that D.B.'s general intellectual functioning is not "significantly subaverage." No "evaluating mental health professional" or "school psychologist[]" has ever diagnosed D.B. with mental retardation. R. 12 at 19. Every psychological expert, to the contrary, concluded that he fell within the "borderline" (and not "significantly subaverage") range. *Id.* at 19. D.B.'s teachers had similar reactions. D.B.'s pre-K teacher reported that "she had greater concerns about [his] behavior than [his] academic ability." *Id.* at 21. His first-grade teacher reported that he "was meeting standards in first grade mathematics, progressing adequately in writing, and . . . performing slightly below grade level in reading." *Id.* His second-grade teacher reported only that he was "below grade level" academically. *Id.* at 22. And although the Cleveland Municipal School District assigned him to a special-education classroom, it did so on the basis of "average," "below-average," or "low-average" performance in six of seven academic subjects and "borderline" performance in the seventh. *Id.* So long as substantial evidence shows that D.B. does not suffer from the "significantly subaverage general intellectual functioning" that Listing 112.05(D) demands, as it does here, the ALJ's finding must be affirmed.

Barnett offers three rejoinders to this conclusion. *First*, she points out that D.B.'s verbal and perceptual IQ scores of 65 and 92, respectively, place him in the first and thirtieth percentiles of his peers. These low scores, she claims, satisfy 112.05(D)'s first requirement as a matter of

law. But this interpretation collapses the Listing's first requirement (significantly subaverage general intellectual functioning) into its third (an IQ score between 60 and 70). It therefore runs afoul of the interpretive canon that requires us to try to give meaning to every word in a statute or regulation. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).

This argument also contradicts our precedents, published and unpublished alike. Consider *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124 (6th Cir. 2003), a nearly identical case. The child's IQ scores in *Elam* were low enough to support a finding of mental retardation, but evaluating experts concluded that she demonstrated borderline intellectual functioning. *Id.* at 126–27. Highlighting the experts' opinions, we affirmed the denial of benefits because it was supported by substantial evidence. *Id.* at 127; *see also Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675–76 (6th Cir. 2009); *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007).

To be clear, an ALJ may consult IQ scores in evaluating intellectual functioning. But equating a low IQ score with "significantly subaverage" intellectual functioning overstates the relevance of the score. The regulations make clear that, when "considering the validity of a test result, [the ALJ] should note and resolve any discrepancies between formal test results and the child's customary behavior . . . ." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.00(D)(8). Barnett's invitation would replace this nuanced evaluation process with a number, and in the process would overlook a core canon of interpretation and several on-point precedents. We must decline the offer.

*Second*, Barnett makes the more modest point that D.B.'s IQ scores are low enough to justify a finding of "significantly subaverage general intellectual functioning." App't Br. at 22–23. But this argument enters the forbidden field of re-weighing the evidence. We must "accept

the *agency's* factual finding[]" when it is supported by substantial evidence, even when substantial evidence could justify a different result. *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). The ALJ's decision fell within the zone of substantial evidence.

*Third*, Barnett faults the ALJ for thinking that a diagnosis of mental retardation is the only way to satisfy 112.05(D)'s first prong. Yet the ALJ did no such thing. He surveyed the record and found that every expert had described D.B.'s intellectual functioning as "borderline," not "significantly subaverage." R. 12 at 19. Crediting those descriptions, he then permissibly found that D.B.'s "borderline intellectual functioning" could not meet Listing 112.05(D)'s criteria. *Id.*

*Does the impairment "functionally equal" a listing?* D.B. still may qualify for benefits if his impairments "functionally equal" the disabilities itemized in the listings. *See* 20 C.F.R. § 416.926a. To determine functional equivalence, the ALJ examines the effects of a claimant's impairments on six behavioral domains: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for oneself, and health and physical well-being. *Id.* A claimant is disabled if his impairments result in an "extreme" limitation in at least one domain or "marked" limitations in at least two. *Id.* The ALJ denied benefits because he found that D.B. had a "marked" limitation in just one domain: "acquiring and using information." R. 12 at 24. On appeal, Barnett argues that the ALJ should have found D.B. markedly limited in "attending and completing tasks." App't Br. at 27. Substantial evidence, however, supports the ALJ's finding that D.B.'s limitations were "less than marked" in that area.

The ALJ's finding turned on this insight: D.B.'s "inattentive, impulsive, and hyperactive behavior" was mostly attributable to ADHD. R. 12 at 25. He supported that insight with four

facts: that ADHD medication made D.B.'s symptoms more manageable; that some of his disruptive behaviors stemmed from his desire for attention; that he could "maintain attention when motivated" and when "working one-on-one"; and that he put in "good effort" and managed to complete formal psychological testing. *Id.* at 25–26. Regrettably for Barnett, these facts suffice to provide substantial evidence in support of the ALJ's finding.

For these reasons, we affirm.