NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0087n.06

No. 14-6102

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LATROY GOLDEN, | ) | **FILED**<br>Jan 28, 2015<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: GIBBONS, SUTTON, and McKEAGUE, Circuit Judges.

PER CURIAM. Latroy Golden appeals the district court's judgment affirming the denial of her applications for child's insurance benefits and supplemental security income benefits.

In 2008, Golden filed applications for child's insurance benefits and supplemental security income benefits, alleging that she became disabled on December 21, 1988. After the Social Security Administration denied the applications, Golden requested a hearing before an administrative law judge (ALJ). The ALJ denied Golden relief, and the Appeals Council declined to review the case. The district court affirmed the denial of Golden's applications.

On appeal, Golden argues that the ALJ erred by concluding that she failed to satisfy the requirements of the regulatory listing for mental retardation (now referred to as "intellectual disability") set forth in 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(C). "Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581

F.3d 399, 405 (6th Cir. 2009). "The substantial-evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Id.* at 406 (internal quotation marks omitted). "We give de novo review to the district court's conclusions on each issue." *Id.*

To meet the regulatory listing in § 12.05(C), a claimant must show (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Golden contends that the ALJ erred by concluding that her general intellectual functioning was borderline rather than significantly subaverage and that she failed to establish the presence of an impairment imposing an additional and significant work-related functional limitation.

Substantial evidence supports the ALJ's determination that Golden did not suffer from significantly subaverage general intellectual functioning. Golden's mental health records and the opinions of the reviewing licensed psychologists support that determination. The records indicated that Golden had normal mental-status findings, including normal mood, affect, speech, memory, behavior, appearance, and goal-oriented thought. And the psychologists opined that Golden's impairments appeared short of the listings. Additionally, Golden held semi-skilled jobs in the past, including jobs at McDonald's and Wal-Mart. That is enough to make a reasonable person accept the evidence as adequate to support the ALJ's conclusion—all that is needed here, *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)—and thus it meets the substantial-evidence standard.

Golden's arguments in response do not change this conclusion. For one, the ALJ did not err in discounting the medical opinions of Perry Adams and Jakatae Jessup—two "senior psychological examiners" who concluded that Golden was mildly mentally retarded or had borderline to extremely low intellectual functioning—because the examiners were not "acceptable medical sources." *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (stating that acceptable medical sources include licensed or certified psychologists, school psychologists, and other licensed or certified individuals who perform the same function as a school psychologist in a school setting). Outside of the school context, the regulations do not include the "equivalent" of a licensed psychologist, *contra* Appellant Br. 20; they are limited to licensed or certified psychologists only. And neither Adams nor Jessup, as "senior psychological examiners," fit that category. *Compare* Tenn. Code Ann. § 63-11-202(c) (defining "senior psychological examiner"), *with* §§ 63-11-203, 63-11-208 (*separately* defining the practice and licensing scheme of a "psychologist"); *cf. Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 126 (6th Cir. 2003) (holding that a licensed individual deemed a "psychological associate" by Kentucky law did not constitute a "psychologist" for purposes of the regulation).

For two, Golden's IQ scores on their own fail to establish that her intellectual functioning was significantly subaverage. *Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 F. App'x 461, 463-64 (6th Cir. 2014).

And for three, we need not address Golden's argument that she established the presence of an impairment imposing an additional and significant work-related functional limitation because substantial evidence supports the ALJ's conclusion concerning Golden's general intellectual functioning.

Accordingly, we affirm the district court's judgment.