**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0087n.06

**No. 09-6527**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Feb 07, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| BOBBY MASSEY, JR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |

**Before: SILER, MOORE, and GRIFFIN, Circuit Judges.**

**SILER**, Circuit Judge. Bobby Massey, Jr., ("Massey") filed an application for disability benefits in 2004, claiming disability since September 22, 2003, when he injured his back. The administrative law judge ("ALJ") awarded Massey a closed period of disability benefits, concluding that after February 1, 2005, Massey was no longer disabled. The appeals council and the district court affirmed the decision to award only a closed period of disability. For the reasons stated below, we **AFFIRM**.

I.

Massey worked as a production control worker in a factory for fourteen years. The ALJ concluded Massey suffered from "status post lumbar fusion on 9/21/04, preceded by two earlier discectomies; and depression."

Dr. Thad Jackson, a neurologist, performed several procedures on Massey. First, in October 2003, he performed a "right L5-S1 lumbar microdiskectomy." Second, in December 2003, he performed another microdiskectomy and a laminectomy. Finally, in September 2004, he performed a "posterior lumbar interbody fusion with right-sided carbon fiber cage." By June 2005, Dr. Jackson concluded Massey had good strength in his legs and had a negative straight-leg raise test.[1] He reported in September 2005 that an MRI showed no evidence of nerve root compression and that there was fusion across the surgical site.

In March 2005, Dr. Jackson stated that Massey could frequently carry 5 - 10 pounds and occasionally carry 15 pounds. He also found that Massey could stand or walk only two hours in an eight-hour work day, in 15 - 20 minute intervals, while he could sit 2 - 4 hours in an eight-hour day, 30 minutes - 1 hour without interruption. He concluded Massey could occasionally climb, balance, stoop, crouch, kneel, crawl, and push/pull, but Massey was restricted from being around moving machinery and vibration.

Dr. Richard Arnold is Massey's family doctor. Massey sought treatment over a period of several years from Dr. Arnold for back and related pain. In June 2004, Dr. Arnold stated that Massey could not lift more than ten pounds occasionally and five pounds frequently, and restricted Massey to 1- 2 hours a day of standing or walking, in only 15-minute intervals. He also restricted Massey to sitting only four hours a day, one hour at a time. Massey was totally restricted from climbing, balancing, stooping, crouching, kneeling, and crawling, as well as reaching, pushing/pulling, heights,

---

[1]A straight-leg raise test checks for radiculopathy, which is a term used to describe harm to spinal nerves.

moving machinery, and vibration. Dr. Arnold concluded, "Massey appears to be totally and permanently disabled."

In August 2006, Dr. Arnold stated that Massey could lift a maximum of fifteen pounds occasionally and only 5 - 10 pounds frequently. He also stated that Massey could stand or walk a maximum of two hours a day, only 15 - 20 minutes at a time. Massey was restricted to 2 - 4 hours a day of sitting, only 30 minutes - 1 hour at a time. Dr. Arnold noted that Massey could occasionally climb, balance, stoop, crouch, kneel, and crawl. He was restricted from pushing/pulling, as well as from working around moving machinery and vibration.

Two Department of Disability Services ("DDS") assessments were prepared for Massey in 2004. They state that Massey occasionally can lift 50 pounds, frequently lift 25 pounds, stand about six hours in an eight-hour day, sit about six hours in an eight-hour day, and push/pull unlimitedly.

The ALJ conducted an evidentiary hearing in July 2006. Massey testified he continued to have problems with his back even after his fusion operation. He stated he had "low back pain, hip pain, also leg pain and it even, it goes to my foot to my toes actually." Massey explained that activity of any kind, including just standing, brought on his pain. He testified that he was almost entirely inactive due to his condition—he could not sit for more than about thirty minutes, nor could he stand for more than about fifteen.

In September 2006, a second evidentiary hearing was held. At the hearing, Dr. Charles Hancock, the ALJ's medical expert, and Carroll Tarvin, a vocational expert ("VE"), testified.

Dr. Hancock is a retired orthopedic surgeon, and he now serves as a medical expert for the DDS. The ALJ sought to have Hancock reconcile the opinions of Drs. Jackson and Arnold with

those of the non-examining DDS medical experts. Dr. Hancock noted that any individual who had three spinal operations would have difficulties but that Massey's problems were not as severe as the treating physicians suggested they were. Rather, after Dr. Jackson's February 2005 diagnosis of status post lumbar fusion, neurologically stable, Massey had a healed spinal fusion and no evidence of nerve root compression, making the surgery a success. Dr. Hancock therefore concluded that after February 2005, the time required for Massey to recover from the spinal surgery, there was no indication of a listing level impairment.

Regarding Massey's residual functional capacity ("RFC"), Dr. Hancock stated that he would have him stooping and crouching occasionally, but would not have him on ropes, ladders or scaffolds or around hazardous machinery, heights, and vibration. He would allow Massey to crawl and kneel, as well as lift ten pounds frequently and twenty pounds occasionally. He saw no reason Massey could not stand and walk for six hours or sit for six hours and found no particular limitations on push/pulling. This translates to a light RFC.

Tarvin then testified, stating Massey's production work was medium, skilled labor and that it would transfer to light factory jobs. The ALJ, adopting the opinion of Dr. Hancock, asked her if a thirty-seven year old who graduated high school, with some college, who could lift

> 20 pounds on occasion, 10 pounds more frequently, stand and walk six out of eight, sit six out of eight, no limits on pushing and pulling, avoid climbing, ropes scaffolds, and ladders; occasionally climb ramps and stairs; frequently balance, kneel, crawl, but occasionally stoop and crouch; avoid whole body, and unprotected heights and dangerous machinery,

would be capable of performing "light transferable skill factory jobs?" Tarvin stated that he would be able to and that jobs of this type, as well as other jobs Massey was capable of performing, exist in significant numbers in the national economy.

The ALJ concluded that Massey was disabled from September 22, 2003 through February 1, 2005, but that "[m]edical improvement occurred as of February 2, 2005, the date the claimant's disability ended." In so concluding, the ALJ gave the testimony of Dr. Hancock "great weight," and the "evaluations of Doctors[] Jackson and Arnold [were] rejected."

II.

We uphold the Commissioner's decision "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citations omitted).

Massey first contends the ALJ violated the treating physician rule by accepting the opinions of Drs. Jackson and Arnold prior to February 2, 2005, then rejecting their opinions in favor of Dr. Hancock's opinion after February 1, 2005.

The treating physician rule requires that "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). However, the opinion of a treating physician does not receive controlling weight merely by virtue of the fact it is from a treating physician. Rather, it is accorded controlling weight where it is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques," and is not "inconsistent . . . with other substantial evidence in the case record." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

The ALJ did not err in failing to give controlling weight to the opinions of the treating physicians. Hancock and two DDS evaluations directly refuted their opinions, and the most recent MRI of Massey's back showed no nerve root compression. Therefore, substantial evidence contradicted the opinions of Drs. Arnold and Jackson. Further, the ALJ articulated good reasons for the weight assigned to the opinions of the treating physicians, and the reasons were supported by evidence in the case record.

Massey next argues the ALJ's determination he was not disabled after February 1, 2005, and can perform light work is not supported by substantial evidence. We reject this claim. Two DDS experts found Massey was not disabled and that he could perform light work. Dr. Hancock testified Massey was not disabled. The 2005 MRI showed no nerve compression, Massey had a negative straight-leg raise test, and there was proper fusion of his back surgery.

Massey also contends the ALJ did not perform a proper analysis of his pain and its effect on his ability to work. "An individual's statements as to 'pain or other symptoms will not alone establish that [he is] disabled.'" *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, there is a two-part test to evaluate a claimant's assertion of disability due to pain. A claimant must first establish an underlying medical condition. Then, he must establish either that objective medical evidence confirms the extent of the alleged pain or that the objective medical evidence could reasonably be expected to produce the pain. *Id.*; 20 C.F.R. § 404.1529. In evaluating claims of pain that cannot be shown through objective medical evidence, the ALJ is to "consider [a claimant's]

statements about the intensity, persistence, and limiting effects of [his] symptoms." 20 C.F.R. § 404.1529. "In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *1 - 2.

Here, Massey has an objective medical condition—status post lumbar fusion. But he cannot show with objective evidence the extent of the pain given that his MRI showed no nerve root compression. He does have scar tissue, and Dr. Hancock as well as the ALJ acknowledged this could reasonably be expected to produce pain. In assessing Massey's credibility, the ALJ looked at the objective medical evidence, Massey's statements concerning his highly restricted daily routine, the DDS opinions, the testimony of both of Massey's treating physicians and Dr. Hancock, as well as Massey's own testimony concerning his pain. There was substantial evidence to support the ALJ's credibility determination, and, therefore, the ALJ did not err in rejecting Massey's subjective claims of pain and suffering.

Massey contends the ALJ did not give the VE a full list of Massey's vocational impairments. Because the list was incomplete, Massey contends the ALJ's hypothetical to the VE is not supported by substantial evidence. Substantial evidence supported the question the ALJ posed to the VE, since it was simply a summary of the ALJ's assessment of Massey's physical condition. Further, there was

no defect concerning a lack of physical impairments being charged to the VE—the physical impairments not charged were previously rejected by the ALJ based on substantial evidence.

Massey finally asserts he did not receive a fair and impartial hearing because the medical expert called to testify, Dr. Hancock, was an employee of the Social Security Administration. Massey, however, cites no authority holding a medical expert who is an employee of the Social Security Administration ineligible to serve as an expert witness at a disability evidentiary hearing.

**AFFIRMED**.