NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0207n.06

No. 09-2060

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Apr 01, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MARYANNE REYNOLDS, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | O P I N I O N |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:    KEITH, McKEAGUE, and KETHLEDGE, Circuit Judges.

**McKeague, Circuit Judge.**  Maryanne Reynolds appeals from the denial of her application for Supplemental Security Income (SSI) and Disability Insurance benefits (DIB), based on the determination that she is not disabled.  She contends that her musculoskeletal problems (primarily in her back), emotional impairments, and obesity equal a Listed Impairment, and that the ALJ made several errors in determining that she is not disabled because she can return to her former employment.  Specifically, she claims that the ALJ erred in (1) failing to evaluate her obesity in combination with her other problems in assessing whether she met or equaled a Listed Impairment; (2) making his credibility determination by mischaracterizing her past treatment; (3) determining her residual functional capability by "ignoring" the opinions of her treating physicians, and (4) considering whether Reynolds could return to her former job as a donut froster, because that job was more than fifteen years before her disability hearing and should not have been considered.

None of these arguments is sufficient to overturn the decision of the ALJ. However, because the ALJ entirely failed to analyze whether the claimant's physical impairments met or equaled a Listed Impairment, we **REVERSE** and **REMAND** for the ALJ to revisit the case and explain his findings at Step Three.

**I.**

The Claimant-Appellant, Maryanne Reynolds, filed an application for Supplemental Security Income (SSI) and Disability Insurance benefits (DIB) in May 2005. She presented an extensive medical history, which we need not repeat. Her claims were denied upon initial review in January 2006, and she proceeded to an administrative hearing in July 2007. The ALJ conducted the five-step inquiry required by the Social Security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] The ALJ determined that at Step One, Reynolds demonstrated that she met the insured status requirements and had not engaged in substantial gainful activity since the alleged onset date. At Step Two, the ALJ found that Reynolds demonstrated she has severe impairments, specifically "back pain" and "an adjustment disorder." At Step Three, the ALJ determined that Reynolds did not have an impairment or impairments that met or medically equaled one of the listed impairments. He therefore continued to Step Four, where he determined that Reynolds had the residual functional

---

[1]The five steps are to be analyzed in sequence, and if the claimant fails to meet her burden at any step, the analysis is at an end. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The claimant bears the burden of proof at steps one through four. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the claimant proves her eligibility under the first four steps, the burden shifts to the Commissioner at Step Five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

capacity to perform "light work," including her "past relevant work as a donut froster," which "does not require the performance of work-related activities precluded by Claimant's residual functional capacity." Because the ALJ found against Reynolds at Step Four, he did not reach Step Five, regarding whether Reynolds can perform other work.

The Appeals Council denied Reynolds' request for review, and the district court below upheld the decision of the ALJ. Reynolds timely appealed to this court, where she challenges the ALJ's determinations on Steps Three and Four.

## II.

This Court "directly reviews the Secretary's findings and conclusions as if it were the first reviewing court." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990). The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA). The Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a reviewing court can reverse the findings of an ALJ only if they are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Youghiogheny,* 49 F.3d at 246. Conversely, if the ALJ commits an error of law, the court must reverse and remand, "even if the factual determinations are otherwise supported by substantial

evidence and the outcome on remand is unlikely to be different." *Kalmbach v. Comm'r of Soc. Sec.*, No. 09-2076, 2011 WL 63602, at *6 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004).

Importantly, an ALJ must include a discussion of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A). The reasons requirement is both a procedural and substantive requirement, necessary in order to facilitate effective and meaningful judicial review.

## III.

At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets *or equals* one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). In other words, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." *Id*. § 404.1525(c)(3). A claimant must satisfy all of the criteria to "meet" the listing. *Id.*; *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). However, a claimant is also disabled if her impairment is the *medical equivalent* of a listing, 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner*, 381 F. App'x at 488, which means it is "at least equal in severity and

duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a); 20 C.F.R. § 404.1526(a).[2]

An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment. *Cf. Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, at *7 (6th Cir. 2006) (upholding ALJ who "compar[ed] the medical evidence of Lawson's impairments with the requirements for listed impairments contained in the SSA regulations"); 30 FED. PROC., L. ED. § 71:234.

Here, the ALJ found both a physical and mental impairment at Step Two: "back pain" and "an adjustment disorder." He then went on to Step Three to determine whether Reynolds had an impairment or combination of impairments that met or medically equaled one of the listed impairments. He began with his conclusion: "Claimant does not have an impairment or combination of impairments which, alone or in combination, meet sections 1.00 or 12.00 of the Listings." He then conducted a thorough analysis of the "Affective Disorders" Listing, Subsection 12.04, 20 C.F.R. pt. 404, Subpt. P, App. 1, conducting a full-page assessment of Reynolds' mental impairment. He compared her medical history and testimony to the Listing, assessing her "activities in daily living," "social functioning," "concentration, persistence or pace," and "decompensation," which tracks the

---

[2]The statutes also stipulate that "medical equivalence" can be found in three ways: (1) the claimant has a listed impairment but does not exhibit the specified severity or findings, yet has "other findings" that are "at least of equal medical significance" to the criteria; (2) the claimant has a non-listed impairment that is "at least of equal medical significance" to a listed impairment; or (3) the claimant has a combination of impairments which do not individually meet a Listed Impairment, but are "at least of equal medical significance" to a listing when viewed in totality. 20 C.F.R. § 416.926; 20 C.F.R. § 404.1526.

criteria in that section. Such an analysis and conclusion regarding Reynolds' mental impairment clearly meets the substantial evidence standard.

However, once he completed his analysis under section 12.00, the ALJ simply went on to the next step in the 5-step analysis - determining residual functional capacity. No analysis whatsoever was done as to whether Reynolds' physical impairments (all summed up in his finding of a severe "back pain" impairment) met or equaled a Listing under section 1.00, despite his introduction concluding that they did not.

Section 1.00 is the subsection applicable to musculoskeletal listings. Specifically, Reynolds claims she qualifies as disabled under subsection 1.04, Disorders of the Spine. It reads:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal code. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test. . . .

20 C.F.R. pt. 404, subpt. P, App. 1. Furthermore, the entire Section 1.00 begins:

> These listings are only examples of common musculoskeletal disorders that are severe enough to prevent a person from engaging in gainful activity. Therefore, in any case in which an individual has a medically determinable impairment that is not listed, an impairment that does not meet the requirements of a listing, or a combination of impairments no one of which meets the requirements of a listing, we will consider medical equivalence.

Ultimately, the ALJ erred by failing to analyze Reynolds' physical condition in relation to the Listed Impairments. Put simply, he skipped an entire step of the necessary analysis. He was

required to assess whether Reynolds met or equaled a Listed Impairment (such as the one above), but did not do so. Admittedly, Reynolds did not raise this specific objection to the decision below, and generally arguments not raised are abandoned. However, this rule is prudential and not jurisdictional, *Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999), and the requirement for specific objections may be excused "in the interest of justice." *Kelly v. Withrow*, 25 F.3d 363, 366 (6th Cir. 1994). This court has previously considered the issue of whether certain impairments meet or equal a listing, even though that issue had not been raised. *See Gwin v. Comm'r of Soc. Sec.*, 109 F. App'x 102 (6th Cir. 2004).

The ALJ's error was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary. 20 C.F.R. § 404.1520(a)(4)(iii). Therefore, if the ALJ had properly analyzed Step Three, and had found Reynolds met Listing 1.04, she would receive benefits regardless of what the ALJ's conclusion would have been at Steps Four and Five. Additionally, in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence Reynolds put forth could meet this listing.

In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence. See *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3rd Cir. 2000). As the Third Circuit explained, "[b]ecause we have no way to review the ALJ's hopelessly inadequate step

three ruling, we will vacate and remand the case for a discussion of the evidence and an explanation of reasoning" supporting the determination that Reynolds' severe impairments do not meet or medically equal a listed impairment. *Burnett*, 220 F.3d at 120.

**IV.**

We have considered Reynolds' other issues on appeal and find them to be without merit. While the SSA regulations indicate that "adjudicators must consider any additional and cumulative effects of obesity," 20 C.F.R. pt. 404, subpt P. app. 1, Listings 1.00Q, 3.00I, and 4.00F, Reynolds' argument that the ALJ failed to consider her obesity fails. Reynolds did not put her obesity at issue in the proceedings below: she did not list obesity as one of her impairments, or list it as one of her difficulties on any paperwork put before the various levels of review. More importantly, she did not present evidence from any physician that described her as obese, much less gave an opinion that her weight imposed additional limitations upon her or exacerbated her other conditions. Therefore, even if Reynolds' silence on the issue of obesity is not deemed to waive consideration of that issue, it does not appear that evidence existed regarding her obesity that the ALJ should have considered.

The ALJ also did not err in assessing Reynolds' credibility. An ALJ is in the best position to observe witnesses' demeanor and to make an appropriate evaluation as to their credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Therefore, an ALJ's credibility assessment will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001); *Walters*, 127 F.3d at 531 (recognizing ALJ's credibility assessment is entitled to "great weight and deference"). In making a credibility determination, Social Security Ruling 96-7p provides that the ALJ must consider the record as a whole, including objective medical evidence;

the claimant's statements about symptoms; any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Here, the ALJ properly recognized the factors that the regulations require to be considered in evaluating a claimant's credibility with regard to their pain. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, at *3. The ALJ also recognized Reynolds' complaints of pain and correlating physical limitations. However, he ultimately found that her claims regarding the "frequency, intensity, or duration" of the pain were "not supported by objective clinical, laboratory, or x-ray findings or by any non-medical evidence, and are, thus, not fully credible," considering her "routine and conservative" treatment, doctor notes revealing that treatment was effective, and lack of "objective support for the extent of the exertional limitations to which Claimant testified." Furthermore, the ALJ accurately detailed Reynolds' treatment history in the opinion, including the "spinal blocks" and "steroidal injections" she received. While the ALJ disagrees with Reynolds about what is considered "conservative treatment," this does not mean he erred in assessing her credibility.

Arguments relating to the ALJ's Step Four analysis need not be reached because the ALJ must revisit his Step Three analysis. However, we note that should the ALJ ultimately conclude that Reynolds' impairments still do not meet or equal a Listed Impairment at Step Three, he should then assess her residual functional capacity, considering all impairments—including ones that are not severe, 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)—and appropriately explain the weight given to each physician's opinion, *see* 20 C.F.R. § 404.1527(d)(3)-(4).

Reynolds argues that the ALJ erred in not giving the treating physicians "substantial deference," and in failing to discuss Dr. Khan's opinion. This argument fails. It is true that an ALJ must determine a claimant's residual functional capacity, considering "numerous factors" including "medical evidence, non-medical evidence, and the claimant's credibility." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010); *see* SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996); SSR 96-8p, at *5. In doing so, an ALJ must give "greater deference" to treating physicians, who are typically best able to present a detailed picture of the claimant's impairment. However, "the opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician." *Massey v. Comm'r of Soc. Sec.*, No. 09-6527, 2011 WL 383254, at *3 (6th Cir. 2011). An ALJ is entitled to discount the medical opinion of a treating physician if it does not meet the above standards, provided that he gives "good reasons" for not according controlling weight. *Wilson*, 378 F.3d at 533.

Here, the ALJ determined Reynolds' residual functional capacity; he made notations to the record, acknowledging Reynolds' claims of pain and summarizing the evidence and the various doctors' findings. While acknowledging Drs. Nercessian's, Marsheh's, and Khan's notes and opinions regarding Reynolds' pain and limitations, he ultimately found that the medical tests and findings give "no objective support for the extent of the exertional limitations" claimed. He also explicitly explained why Drs. Marsheh and Nercessian were not given controlling weight, noting that they "relied on her subjective report," "seemed to uncritically accept as true" what she reported, and ultimately gave reports that were "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." These were sufficient reasons for not giving controlling weight

to their opinions. *See* SSR 96-5p, at *3; SSR 96-8p, at *5 (noting that an ALJ may consider evidence such as the claimant's credibility, whether findings are supported by objective medical evidence, and corroboration from other physicians of record); *Hickey-Haynes v. Barnhart*, 116 F. App'x. 718, 726 (6th Cir. 2004) (noting an ALJ may "consider all of the medical and nonmedical evidence").

The ALJ also discussed Dr. Khan's opinion. He referenced findings and opinions of all three treating physicians on pages six through eight of his opinion, and specifically discussed Dr. Khan's diagnoses and ultimate opinion on Reynolds' limitations as well. While the ALJ's decision does not place Khan's name into the paragraph describing the weaknesses of the other doctors' opinions, "the good reason requirement does not require conformity at all times." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010) (citing *Wilson*, 378 F.3d at 547). "Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of [the] case. . . . An ALJ may accomplish the goals of this procedural requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." *Id.*; *see Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464-65 (6th Cir. 2005).

Here, as in *Coldiron*, "the ALJ's evaluation of the other physicians' opinions of record and [the claimant's] credibility undermined both the supportability and the consistency" of Dr. Khan's opinion. 391 F. App'x at 440. In essence, the ALJ's failure to explicitly explain his refusal to afford Dr. Khan controlling weight is harmless error, because the same weaknesses that existed in the other doctors' opinions clearly existed in his as well. Therefore, reversal is not warranted on this issue.

Lastly, the ALJ did not err in determining that Reynolds could perform her past relevant work as a donut froster. Reynolds' own documents and testimony make the time of that employment unclear, but in any event, the 15-year time-line is simply a guide to ensure that past work is considered when it accurately predicts abilities today. *See* 20 C.F.R. §§ 404.1565(a), 416.965(a). Reynolds' job as a donut froster was unskilled work, and clearly the skills needed to perform that job have not changed —therefore, the "skills and abilities" she acquired there would still be useful upon return. *See Smith v. Sec'y of Health & Human Servs*., 893 F.2d 106, 109 (6th Cir. 1989) ("The rationale of the 15-year guide does not apply where the question concerns unskilled work."). Because of this, it was not error for the ALJ to conclude that her donut froster job was "past relevant work," and find her not to be disabled since she was able to return to it.

**V.**

For the foregoing reasons, the case is **REVERSED** and **REMANDED** to the ALJ for further proceedings consistent with this opinion.