**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0516n.06

No. 13-5739

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jul 15, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DEGARY L. BURBRIDGE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: MOORE, WHITE, and DONALD, Circuit Judges.

PER CURIAM. DeGary L. Burbridge appeals the district court's judgment affirming the denial of his application for supplemental security income benefits. We **VACATE** and **REMAND** for further proceedings.

I.

In 2008, Burbridge (born September 22, 1978) filed an application for supplemental security income (SSI) benefits, asserting a disability beginning in February 1980. After the Social Security Administration denied his application, Burbridge requested a hearing before an administrative law judge (ALJ). The ALJ completed the required five-step sequential evaluation and denied Burbridge relief, concluding, inter alia, that he did not satisfy the requirements of the regulatory listing for mental retardation.[1] *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

---

[1] Effective 2013, the term "mental retardation" was replaced in Listing 12.05 by "intellectual disability." We use the term "mental retardation" because it was used in the proceedings below.

At step one, the ALJ concluded that Burbridge was not engaged in substantial gainful activity. At step two, the ALJ found that Burbridge has the severe impairments of seizure disorder, mood disorder not otherwise specified, borderline intellectual functioning, and personality disorder not otherwise specified. At step three, which addresses whether the claimant has an impairment or combination of impairments that meets or is the medical equivalent of one of impairments listed in 20 C.F.R. part 404, subpart P, appendix 1, the ALJ concluded that Burbridge's physical impairments did not meet a listed impairment and went on to consider his mental impairments.

The consultative psychologist, Dr. Richard Sexton, evaluated Burbridge and had him tested. Burbridge had a Wechsler Adult Intelligence test full scale score of 64, which "would suggest that he was functioning in the mild range of mental retardation overall," with a composite score of 58 on the verbal comprehension index. Dr. Sexton concluded that Burbridge "was functioning at the low end of the borderline level clinically." Dr. Sexton also concluded that Burbridge is moderately impaired in his ability to interact with others; mildly impaired in his ability to understand, recall and carry out simple instructions; mildly impaired in his ability to maintain attention, concentration, persistence and pace; and moderately impaired in his ability to tolerate stress and pressures of day-to-day work activity. Burbridge offered the report of Dr. Linda Hartmann, who disagreed with Dr. Sexton's assessment and concluded that Burbidge has marked difficulties in maintaining social functioning and maintaining concentration, persistence or pace.

Relying on the testimony of Dr. Sexton, and rejecting the testimony of Dr. Hartmann, the ALJ determined that Burbridge does not meet the requirements of § 12.04, Affective Disorders, or § 12.08, Personality Disorders, because he does not meet the requirements of "paragraph B."

"Paragraph B" of those sections requires a showing of at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration persistence or pace; or repeated episodes of decompensation, each of extended duration.

After considering §§ 12.04 and 12.08, the ALJ turned to § 12.05 and found that Burbridge did not meet the introductory paragraph of that section:

> The undersigned considered Listing 12.05 in light of the claimant's borderline intellectual functioning. Clinical psychologist Dr. Hartmann asserts in her report that the claimant's inclusion in special education for developmentally handicapped students at Taft High School directly implies that his IQ functioning was below 70 during his teenage years. She further asserts that this evidence satisfies "the need for manifesting the intellectual functioning level during the developmental period and consequently Listing 12.05 is met. (Exhibit 20F/2).

> Listing 12.05, however, requires significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. According to . . . (DSM-IV), adaptive functioning means the person's effectiveness in meeting expected standards in the areas of communication, self-care, home living, social interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, and health and safety. *In this case, the evidence fails to establish deficits in adaptive functioning prior to age 22 (see exhibits 14E and 17F).* Accordingly, the undersigned finds that the claimant's impairments, considered singly and in combination, do not meet or medially equal the criteria of listing 12.05.

[Emphasis added.]

Having determined that Burbridge did not meet the introductory paragraph, the ALJ did not consider whether Burbridge would satisfy the subparagraphs. The ALJ moved on to steps 4 and 5, finding that Burbridge has a residual functional capacity (RFC), and that given his RFC, age, education, and experience, there are available jobs that Burbridge can perform. The Appeals Council declined to review the case, and the district court affirmed.

II.

On appeal, Burbridge argues that the ALJ erred at Step 3 of the required sequential analysis by concluding that he did not meet the requirements of the regulatory listing for mental retardation set forth in § 12.05. Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence on the record. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The substantial-evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support the conclusion. *Id.* at 406. "Importantly, an ALJ must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 5 U.S.C. § 557(c)(3)(A)).

Section 12.05 provides:

12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning[2] initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

---

[2] Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their age group, sociocultural background, and community setting. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, (Fourth Edition, Text Revision); American Psychiatric Association (2000) pp. 41–2.

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

The ALJ decided the material question whether Burbridge meets the requirements of this listed impairment with a single sentence: "In this case, the evidence fails to establish deficits in adaptive functioning prior to age 22 (see exhibits 14E and 17F)." Exhibit 17F simply establishes that Burbridge did not have a speech or hearing disability. Exhibit 14E, Burbridge's school record, contains multiple documents and entries, many of which support that Burbridge had intellectual and adaptive deficits at that time. These documents state that Burbridge was developmentally handicapped, easily distracted, did not work well with peers, was absent, and "because of his behavior, his progress has been halted. He is emotional, violent, and hinders the progress of any learning in the classroom for the other students." Exhibit 14E also supports that Burbridge was placed in special-education classes because of his behavioral and developmental problems, had significant difficulties with reading, writing, and math, was exempt from proficiency testing, struggled with following directions and completing assignments, was emotional and violent, did not cooperate with teachers or his peers, and hindered the progress of

other students in the classroom. A 1992 Team Summary Report of the Multidisciplinary Evaluation Team found Burbridge needed a Special Education Program due to deficiencies in:

> [C]ognitive functioning, academic functioning, emotional functioning, classroom behavior, developmental history, adaptive behavior, communication skills, parental information, gross/fine sensory motor skills . . . [which] . . . disability adversely affect educational performance . . . [and is] speech handicapped.

Given the abundant support in Exhibit 14E for a finding that Burbridge's deficits manifested before age 22, the ALJ was obliged to do more than simply cite the exhibit. Under these circumstances, a statement of "the reasons or basis" for the material finding would include a statement of which portions of the exhibit the ALJ relied on and why they supported a finding that Burbridge did not manifest the required deficits. *See Reynolds,* 424 F. App'x at 414 ("The reasons requirement is both procedural and substantive requirement necessary in order to facilitate effective and meaningful judicial review.") We note that the ALJ's analysis is not aided by any reliance on Dr. Sexton's evaluation because his report did not address this aspect of §12.05, and Dr. Sexton, and Drs. Finnerly and Chambly did not have Burbridge's school records.

We therefore remand for additional findings under § 12.05. On remand, the ALJ should 1) consider whether information regarding Dr. Hartmann's qualifications that was submitted by Burbridge after the hearing bears on the weight to be given her opinion; 2) consider exhibit 14E in its entirety and state the reasons for the factual inferences drawn from the exhibit; 3) address whether Dr. Sexton's IQ testing establishes Burbridge's eligibility under § 12.05(B);[3] and 4) determine whether Burbridge has a physical or other mental impairment imposing an additional and significant work-related limitation of function which, in addition to his IQ, qualifies him under § 12.05(C). We leave it to the ALJ whether to revisit subsection D.

---

[3] We acknowledge this argument was raised for the first time on appeal, and would not remand for further proceedings to address this argument were we not remanding based on Burbridge's other arguments.

Accordingly, we **VACATE** and **REMAND** for further proceedings consistent with this opinion.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** The scope of our review in this case is quite circumscribed: we must affirm the Commissioner's decision if substantial evidence exists in the record to support the administrative law judge's ("ALJ") determination that Burbridge does not meet the requirements of Listing 12.05. I believe that the ALJ's Listing 12.05 ruling is supported by substantial evidence, and therefore, I respectfully dissent.

"'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Certainly, "we must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992) (internal quotation marks omitted). But we "'may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility,'" *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)), "even if there is substantial evidence in the record that would have supported an opposite conclusion," *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). We must also keep in mind that "[t]he burden lies with the claimant to prove that [he] is disabled." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

In finding that Burbridge failed to demonstrate that he meets the capsule definition, the ALJ cited Exhibits 14E and 17F, which are school records and a "Speech/Language Report," respectively. Administrative Record ("A.R.") at 26 (Page ID #55) (citing A.R. at 223–234 (Page ID #252–263); A.R. at 441–42 (Page ID #470–71)). Exhibit 14E shows that Burbridge participated in gym, art, music, and home economics, *see* A.R. at 223 (Page ID #252), that his performance in school was not due to "a severe behavioral handicap," A.R. at 232 (Page ID

- 8 -

#261), and that he could "be very pleasant and mannerly," A.R. at 224 (Page ID #253). Exhibit 17F states that Burbridge's articulation, speech, fluency, voice, and hearing were "[w]ithin normal limits" in ninth grade. A.R. 441–42 (Page ID #470–71). These parts of the documents suggest that Burbridge did not manifest deficiencies in adaptive functioning while in school. As the majority points out, there are statements in the record that point the other way, *see* Majority Op. at 5, but given that there is no medical opinion finding a manifested deficiency[1] and that Burbridge had the burden of proof, these contrary statements do not mean that the ALJ's decision is not supported by substantial evidence. If we were reviewing the ALJ's decision de novo, I might be inclined to weigh the evidence differently, but under this narrow standard of review, I must affirm the district court and the ALJ.

The majority holds that the ALJ failed to explain his findings adequately and remands for further findings. *See* Majority Op. at 4 (citing 5 U.S.C. § 557(c)(3)(A); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011)). I do not believe that this remand is necessary or appropriate. I agree that the ALJ's analysis is cursory, and I would not recommend it as a model to be followed, but he did cite the relevant exhibits in the record. Those exhibits contain substantial evidence to support his conclusion, and thus, under our standard of review, that is enough. The majority sees this case differently, and as a result, I respectfully dissent.

---

[1]Whether a claimant meets the requirements of a particular listing, including whether he is intellectually disabled, is a question "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). The ALJ can consult medical opinions, and a medical opinion contrary to the ALJ's finding must be explained. §§ 404.1527; 416.1444. But an ALJ has discretion whether to order additional testing. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).