PER CURIAM.
DeGary L. Burbridge appeals the district court’s judgment affirming the denial of his application for supplemental security income benefits. We VACATE and REMAND for further proceedings.
I.
In 2008, Burbridge (born September 22, 1978) filed an application for supplemental security income (SSI) benefits, asserting a disability beginning in February 1980. After the Social Security Administration denied his application, Burbridge requested a hearing before an administrative law judge (ALJ). The ALJ completed the required five-step sequential evaluation and denied Burbridge relief, concluding, inter alia, that he did not satisfy the requirements of the regulatory listing for mental retardation.[1] See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.
At step one, the ALJ concluded that Burbridge was not engaged in substantial gainful activity. At step two, the ALJ found that Burbridge has the severe impairments of seizure disorder, mood disorder not otherwise specified, borderline intellectual functioning, and personality disorder not otherwise specified. At step three, which addresses whether the claimant has an impairment or combination of impairments that meets or is the medical equivalent of one of impairments listed in 20 C.F.R. part 404, subpart P, appendix 1, the ALJ concluded that Burbridge’s physical impairments did not meet a listed impairment and went on to consider his mental impairments.
The consultative psychologist, Dr. Richard Sexton, evaluated Burbridge and had him tested. Burbridge had a Weehsler Adult Intelligence test full scale score of 64, which “would suggest that he was functioning in the mild range of mental retardation overall,” with a composite score of 58 on the verbal comprehension index. Dr. Sexton concluded that Bur-bridge “was functioning at the low end of the borderline level clinically.” Dr. Sexton also concluded that Burbidge is moderately impaired in his ability to interact with others; mildly impaired in his ability to understand, recall and carry out simple *414 instructions; mildly impaired in his ability to maintain attention, concentration, persistence and pace; and moderately impaired in his ability to tolerate stress and pressures of day-to-day work activity. Burbridge offered the report of Dr. Linda Hartmann, who disagreed with Dr. Sexton’s assessment and concluded that Bur-bidge has marked difficulties in maintaining social functioning and maintaining concentration, persistence or pace.
Relying on the testimony of Dr. Sexton, and rejecting the testimony of Dr. Hart-mann, the ALJ determined that Burbridge does not meet the requirements of § 12.04, Affective Disorders, or § 12.08, Personality Disorders, because he does not meet the requirements of “paragraph B.” “Paragraph B” of those sections requires a showing of at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration persistence or pace; or repeated episodes of decompensation, each of extended duration.
After considering §§ 12.04 and 12.08, the ALJ turned to § 12.05 and found that Burbridge did not meet the introductory paragraph of that section:
The undersigned considered Listing 12.05 in light of the claimant’s borderline intellectual functioning. Clinical psychologist Dr. Hartmann asserts in her report that the claimant’s inclusion in special education for developmentally handicapped students at Taft High School directly implies that his IQ functioning was below 70 during his teenage years. She further asserts that this evidence satisfies “the need for manifesting the intellectual functioning level during the developmental period and consequently Listing 12.05 is met. (Exhibit 20F/2).
Listing 12.05, however, requires significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. According to (DSM-IV), adaptive functioning means the person’s effectiveness in meeting expected standards in the areas of communication, self-care, home living, social interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, and health and safety. In this case, the evidence fails to establish deficits in adaptive functioning prior to age 22 (see exhibits HE and 17F). Accordingly, the undersigned finds that the claimant’s impairments, considered singly and in combination, do not meet or medially equal the criteria of listing 12.05.
[Emphasis added.]
Having determined that Burbridge did not meet the introductory paragraph, the ALJ did not consider whether Burbridge would satisfy the subparagraphs. The ALJ moved on to steps 4 and 5, finding that Burbridge has a residual functional capacity (RFC), and that given his RFC, age, education, and experience, there are available jobs that Burbridge can perform. The Appeals Council declined to review the case, and the district court affirmed.
II.
On appeal, Burbridge argues that the ALJ erred at Step 3 of the required sequential analysis by concluding that he did not meet the requirements of the regulatory listing for mental retardation set forth in § 12.05. Our review of the ALJ’s decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence on the record. Blakley v. Comm’r of Soc. Sec., 581 F.3d 399, 405 (6th Cir.2009). The substantial-evi *415 dence standard is met if a reasonable mind might accept the relevant evidence as adequate to support the conclusion. Id. at 406. “Importantly, an ALJ must include a discussion of ‘findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.”’ Reynolds v. Comm’r of Soc. Sec., 424 Fed.Appx. 411, 414 (6th Cir.2011) (quoting 5 U.S.C. § 557(c)(3)(A)).
Section 12.05 provides:
12.05 Intellectual disability: Intellectual disability refers to significantly subaver-age general intellectual functioning with deficits in adaptive functioning[2] initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
OR
B. A valid verbal, performance, or full scale IQ of 59 or less;
OR
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
OR
D.A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.
20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.
The ALJ decided the material question whether Burbridge meets the requirements of this listed impairment with a single sentence: “In this case, the evidence fails to establish deficits in adaptive functioning prior to age 22 (see exhibits 14E and 17F).” Exhibit 17F simply establishes that Burbridge did not have a speech or hearing disability. Exhibit 14E, Burbridge’s school record, contains multiple documents and entries, many of which support that Burbridge had intellectual and adaptive deficits at that time. These documents state that Burbridge was developmentally handicapped, easily distracted, did not work well with peers, was absent, and “because of his behavior, his progress has been halted. He is emotional, violent, and hinders the progress of any learning in the classroom for the other students.” Exhibit 14E also supports that Burbridge was placed in special-education classes because of his behavioral and developmental problems, had significant difficulties with reading, writing, and math, was exempt from proficiency testing, struggled with following directions and completing assignments, was emotional and violent, did not cooperate with teachers or his peers, and *416 hindered the progress of other students in the classroom. A 1992 Team Summary Report of the Multidisciplinary Evaluation Team found Burbridge needed a Special Education Program due to deficiencies in:
[C]ognitive functioning, academic functioning, emotional functioning, classroom behavior, developmental history, adaptive behavior, communication skills, parental information, gross/fine sensory motor skills ... [which] ... disability adversely affect educational performance ... [and is] speech handicapped.
Given the abundant support in Exhibit 14E for a finding that Burbridge’s deficits manifested before age 22, the ALJ was obliged to do more than simply cite the exhibit. Under these circumstances, a statement of “the reasons or basis” for the material finding would include a statement of which portions of the exhibit the ALJ relied on and why they supported a finding that Burbridge did not manifest the required deficits. See Reynolds, 424 Fed.Appx. at 414 (“The reasons requirement is both procedural and substantive requirement necessary in order to facilitate effective and meaningful judicial review.”) We note that the ALJ’s analysis is not aided by any reliance on Dr. Sexton’s evaluation because his report did not address this aspect of § 12.05, and Dr. Sexton, and Drs. Finnerly and Chambly did not have Bur-bridge’s school records.
We therefore remand for additional findings under § 12.05. On remand, the ALJ should 1) consider whether information regarding Dr. Hartmann’s qualifications that was submitted by Burbridge after the hearing bears on the weight to be given her opinion; 2) consider exhibit 14E in its entirety and state the reasons for the factual inferences drawn from the exhibit; 3) address whether Dr. Sexton’s IQ testing establishes Burbridge’s eligibility under § 12.05(B);[3] and 4) determine whether Burbridge has a physical or other mental impairment imposing an additional and significant work-related limitation of function which, in addition to his IQ, qualifies him under § 12.05(C). We leave it to the ALJ whether to revisit subsection D.
Accordingly, we VACATE and REMAND for further proceedings consistent with this opinion.

. Effective 2013, the term "mental retardation” was replaced in Listing 12.05 by "intellectual disability.” We use the term "mental retardation” because it was used in the proceedings below.

. Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their age group, sociocultural background, and community setting. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, (Fourth Edition, Text Revision); American Psychiatric Association (2000) pp. 41-2.

. We acknowledge this argument was raised for the first time on appeal, and would not remand for further proceedings to address this argument were we not remanding based on Burbridge’s other arguments.